UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-22797-BLOOM/Otazo-Reyes

CONSISTENT FUNDING LLC,

    Petitioner,

v.

SOUTH FLORIDA CONSTRUCTION
OF NAPLES, INC. and MARK RAYMOND
SOLLITTO,

    Respondents.
_____/

## ORDER OF DISMISSAL AND CLOSING CASE

**THIS CAUSE** is before the Court upon Petitioner Consistent Funding LLC's ("Petitioner") Verified Petition for Preliminary Injunction in Aid of Arbitration, ECF No. [1] ("Petition"), filed on August 2, 2021. The Court has reviewed the Petition in conjunction with the Memorandum of Law in Support, ECF No. [3], all related exhibits, and the applicable law, and is otherwise fully advised. For the reasons explained below, the Petition is denied, and this case is dismissed.

    **I.**    **BACKGROUND**

The facts relevant to the instant Petition are as follows. On July 15, 2021, Petitioner and Respondent South Florida Construction of Naples, Inc. ("South Florida Construction") entered into a written agreement ("Agreement") whereby South Florida Construction sold Petitioner $150,000.00 in future receipts for an up-front discounted sum. ECF No. [1] ¶¶ 7-9. Under the Agreement, South Florida Construction agreed to pay Petitioner 25% of the future receipts up to $150,000.00. *Id*. ¶ 9. The Agreement provides further that, in the event of a default by South

Florida Construction, the full uncollected amount of the receipts in addition to fees due under the Agreement would become immediately due and payable in full to Petitioner. *Id.* ¶ 13. Respondent Mark Raymond Sollitto ("Sollitto") guaranteed the obligations of South Florida Construction under the Agreement. *Id.* ¶ 16. According to Petitioner, South Florida Construction defaulted under the Agreement. *Id.* ¶¶ 14, 19.

The Agreement and guaranty contain mandatory arbitration provisions, pursuant to which Petitioner initiated an arbitration against South Florida Construction and Sollitto (together, "Respondents") on July 29, 2021. *Id.* ¶¶ 30-32. According to Petitioner, the Agreement contains a provision authorizing a court to issue a TRO. *Id.* ¶ 35. The Agreement and guaranty also authorize the arbitrator to issue interim injunctive relief. *Id.* ¶¶ 36-38. Petitioner made an application for emergency injunctive relief upon the commencement of arbitration to restrain Respondents' accounts. *Id.* ¶ 39. The appointed interim arbitrator granted a temporary restraining order, with which Respondents' bank refused to comply. *Id.* ¶¶ 40-42. Accordingly, Petitioner is requesting that this Court issue a temporary restraining order ("TRO") and preliminary injunction restraining all funds in any First Florida Integrity Bank account pending the resolution of the arbitration. *Id.* ¶¶ 47-48. Petitioner otherwise has asserted no cause of action in conjunction with its request for injunctive relief.

## II.   LEGAL STANDARD

The Court of Appeals for the Eleventh Circuit has explained that the four factors to be considered in determining whether to grant a temporary restraining order or a preliminary injunction are the same. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005). Namely, a movant must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury

outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Id.* at 1225-26 (citing *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). "The primary difference between the entry of a temporary restraining order and a preliminary injunction is that a temporary restraining order may be entered before the defendant has an adequate opportunity to respond, even if notice has been provided." *Textron Fin. Corp. v. Unique Marine, Inc.*, No. 08-10082-CIV, 2008 WL 4716965, at *5 (S.D. Fla. Oct. 22, 2008).

### III. DISCUSSION

#### A. Notice prior to issuance of a TRO

Before addressing whether these four factors have been met, however, the Court must first determine whether Petitioner has sufficiently justified its failure to give notice to Respondents. *Emerging Vision, Inc. v. Glachman*, No. 10-80734-CIV, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010), *report and recommendation adopted*, No. 10-80734-CIV, 2010 WL 3293351 (S.D. Fla. Aug. 11, 2010). Under Federal Rule of Civil Procedure 65(b), a court may issue a temporary restraining order without notice to the adverse party *only if*:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

The requirements of Rule 65(b)(1) "are not mere technicalities, but establish minimum due process." *Thompson v. Ramirez*, 597 F. Supp. 726, 726 (D.P.R. 1984); *see also Vaughan v. Bank of Am., N.A.*, 2010 WL 3273052, at *1 (S.D. Ala. August 18, 2010) ("The requirements of Rule 65(b)(1) are not merely technical niceties that a court may easily disregard, but rather crucial safeguards of due process."). Thus, "[t]o obtain *ex parte* relief, a party must strictly comply with

these requirements." *Glachman*, 2010 WL 3293346, at *3. Moreover, *ex parte* temporary restraining orders are considered to be an extreme remedy "to be used only with the utmost caution," *Levine v. Camcoa Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995) (Hill, C.J., concurring), and "very few circumstances" justify granting such relief, *Glachman*, 2010 WL 3293346, at *4 (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)). Ultimately, temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).

With regard to the first requirement of Rule 65(b)(1), the Court concludes that Petitioner has failed to set forth any specific facts that demonstrate it will suffer immediate and irreparable harm "before [Respondents] can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Specifically, Petitioner argues that, absent injunctive relief, Respondents will conceal or dissipate funds in their accounts.

This alleged injury is not so immediate that it clearly establishes irreparable harm to Petitioner before Respondents have an opportunity to be heard that would warrant an *ex parte* temporary restraining order. *See Xylem, Inc. v. Church*, No. 8:19-CV-304-T-33TGW, 2019 WL 459144, at *3 (M.D. Fla. Feb. 6, 2019) (denying request for *ex parte* temporary restraining order where movant did not provide specific facts "concerning any efforts made to give notice and why notice should not be required"); *Gardner v. Mutz*, No. 8:18-CV-2843-T-33JSS, 2018 WL 6061447, at *3 (M.D. Fla. Nov. 20, 2018) (same). The possibility of Respondents concealing or dissipating funds, in and of itself, is not the type of immediate injury warranting the relief requested. *Xylem, Inc.*, 2019 WL 459144, at *3; *Gardner*, 2018 WL 6061447, at *3.

Moreover, even if Petitioner ultimately prevails in the arbitration and Respondents have no

funds to satisfy the award, adequate legal remedies exist to correct any injury to Petitioner. *See, e.g.*, 9 U.S.C. § 9 (providing for confirmation of arbitral awards by the courts); *Rollins, Inc. v. Garrett*, No. 6:05-CV-671-PCF-KRS, 2005 WL 2149293, at *3-4 (M.D. Fla. Sept. 6, 2005) ("The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Ultimately, all of Plaintiff's arguments in favor of an *ex parte* temporary restraining order rest on the merits of the underlying claims subject to the arbitration. "A plaintiff, however, 'cannot obtain an *ex parte* restraining order by merely pointing to the merits of its claims.'" *Glachman*, 2010 WL 3293346, at *5 (quoting *Adobe Sys., Inc. v. S. Sun Prods., Inc.*, 187 F.R.D. 636, 640 n.3 (S.D. Cal. 1999)). Accordingly, the Court concludes that Petitioner's alleged immediate and irreparable injury is inadequate to justify *ex parte* injunctive relief here.

Likewise, Petitioner asserts that it has not made any effort to notify Respondents, *see* ECF No. [1-1] ¶ 2, and its attorney's Declaration is devoid of an explanation for why notice should be excused, as required under Rule 65(b)(1)(B). Petitioner's "failure to provide the information required under Rule 65(b)(1)(B) is fatal to its request for [a temporary restraining order] without notice." *Living v. Merscorp Inc.*, No. 1:10-CV-3410-JEC-JFK, 2010 WL 11552958, at *3 (N.D. Ga. Oct. 26, 2010), *report and recommendation adopted*, No. 1:10-CV-3410-JEC, 2010 WL 11553003 (N.D. Ga. Dec. 17, 2010); *see also Xylem, Inc.*, 2019 WL 459144, at *3; *Gardner*, 2018 WL 6061447, at *3; *Kazal v. Price*, No. 8:17-cv-2945-T-23AAS, 2017 WL 6270086, at *4 (M.D. Fla. Dec. 8, 2017) (denying motion for temporary restraining order in part because "[t]he plaintiffs' attorneys fail[ed] to submit an affidavit certifying an effort to notify [the defendant] about the

motion and fail[ed] to explain the necessity for an *ex parte* order"); *Thomas-McDonald v. Shinseki*, No. CV 113-050, 2013 WL 12121316, at *1 (S.D. Ga. Apr. 3, 2013) (same).

In sum, Petitioner has failed to satisfy the stringent requirements of Rule 65(b)(1). *See Granny Goose Foods, Inc.*, 415 U.S. at 438. Because "[a]n *ex parte* temporary restraining order is an extreme remedy to be used only with the utmost caution," the Court is unwilling to grant such relief in light of these deficiencies. *Levine*, 70 F.3d at 1194; *see also Shinseki*, 2013 WL 12121316, at *1. Therefore, Petitioner's request for a temporary restraining order is denied.

### B. Request for preliminary injunction

Even if Petitioner adequately complied with the notice requirements, Petitioner's request for preliminary injunctive relief is due to be denied. Petitioner alleges that it is entitled to injunctive relief because: (1) Petitioner has a substantial likelihood of success on the merits; (2) Petitioner will suffer irreparable harm without injunctive relief because Respondents will conceal or dissipate funds they stole from Petitioner, which will render any arbitration award ineffectual; and (3) the granting of the preliminary injunction will not disserve the public interest, especially where Respondents contractually consented to it. ECF No. [1]. Petitioner contends further that injunctive relief requested under these circumstances is routinely granted.

Notwithstanding the four factors for the Court's consideration in determining whether to issue a TRO or preliminary injunction, the Eleventh Circuit has also made it clear that "any motion or suit for a traditional injunction *must be predicated upon a cause of action*, such as nuisance, trespass, the First Amendment, etc., regarding which a plaintiff must show a likelihood or actuality of success on the merits." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (emphasis added).

> There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to

> articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim). *See, e.g.*, *Paisey v. Vitale*, 807 F.2d 889, 892 (11th Cir. 1986) ("[T]he district court did not err in denying [the plaintiff's] motion for a preliminary injunction and dismissing the injunctive count of [the plaintiff's] complaint because [the plaintiff] has failed to state a claim for relief. . . .").
>
> Considering the issue from another perspective, a traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed — if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise. Of course, even if his common law, statutory, or constitutional rights have been violated, the plaintiff must also meet the other requirements for obtaining an injunction to show that an injunction is the proper remedy for such violation.

*Id.* Thus, "a party may not obtain a 'traditional' injunction if he lacks a cognizable, meritorious claim." *Id.* at 1097 n.5.

In the instant action, Petitioner does not assert any cause of action. Rather, Petitioner seeks to enjoin the allegedly and potentially improper concealment or dissipation of funds by Respondents in order to preserve the possibility of recovery should Petitioner prevail in arbitration, without doing so pursuant to some independent claim for relief. This is precisely the kind of "abstract" suit for which traditional injunctions are unavailable. *Id.* at 1097. The Eleventh Circuit in *Klay* explained that such injunctive relief was improper in a suit where no cause of action has been asserted:

> The injunction in this case was not a traditional injunction, and could not be justified as such, because the plaintiffs had no cause of action against the defendants upon which the injunction was based. The injunction the plaintiffs sought prevented the defendants from arbitrating certain claims against them. "Wrongful arbitration," however, is not a cause of action for which a party may sue. . . . [Furthermore, in] initiating an arbitration . . . the defendants [] did not violate any of the plaintiffs' legally cognizable rights.

*Id.* at 1098. In addition, Petitioner has not cited any case law from a federal court, much less the Eleventh Circuit, which would support granting the relief it seeks in this case.

Here, the Petition is predicated on Petitioner's alleged entitlement to traditional injunctive relief, despite the fact that it does not allege any independent cause of action, such as breach of

7

contract, from which this entitlement would stem. Therefore, the Court concludes that the Petition must be denied because Petitioner cannot establish that it is entitled to the traditional injunctive relief sought here. As such, the instant action for injunctive relief, absent any cause of action alleging a cognizable basis for relief, warrants dismissal.[1]

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition, **ECF No. [1]**, is **DENIED**.

2. This action is **DISMISSED**.

3. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 3, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[1] The Court also notes that the Petition invokes the Court's diversity jurisdiction, alleging that Petitioner is a Florida limited liability company whose members are citizens of New York and South Florida Construction is a Florida Corporation and Sollitto is a resident of Florida. ECF No. [1] ¶¶ 1-3. These allegations, however, are insufficient to properly invoke the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1). In addition, the allegations are inconsistent with the Memorandum of Law, which asserts that the "parties are diverse because the Petitioner is a limited liability company whose members are citizens of Florida, [and] Respondents are citizens of Florida[.]" ECF No. [3] at 4. As such, even assuming Petitioner was entitled to traditional injunctive relief, it is not clear that the Court may exercise jurisdiction in this case based upon the deficient allegations in the Petition.